UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Lodges at Oakparke Estates Homeowner's Ass'n, Inc., | Case No. 24-cv-1682 (ECT/SGE) |
| Plaintiff, | |
| v. | ORDER |
| Burns & Wilcox, Ltd., et al., | |
| Defendants. | |

This matter is before the Court on Plaintiff Lodges at Oakparke Estates Homeowner's Association, Inc.'s ("the Association") Motion for Leave to Amend the Pleadings (Dkt. No. 29). As set forth below, this Court will grant in part and deny in part the Association's motion.

## BACKGROUND

The Association operates a "planned community" in Eden Prairie. (Proposed Am. Compl., Dkt. No. 33, ex. 8 ("PAC"), ¶ 1.) Defendant Burns & Wilcox, Ltd. ("B&W") helps its clients secure specialized insurance, and Defendant Commercial Industrial Building Owner's Alliance, Inc. ("CIBA") sells insurance policies. (*See* PAC.)

The Association requested its insurance broker get quotes for property insurance from B&W. B&W obtained a quote from CIBA with a wind/hail deductible of "$50,000 per location per occurrence." (*Id.* ¶ 7.) B&W communicated this quote to the Association. (*Id.* ¶ 9.) The Association relied on those communications and told its insurance agent to instruct B&W to "bind coverage with CIBA consistent with this quote." (*Id.*)

CIBA then issued a policy containing a different wind/hail deductible. Instead of the previously quoted $50,000-per-location-per-occurrence deductible, CIBA's issued policy stated that the deductible would be "FIVE PER CENT (5%) of the total insurable values, subject to a minimum of $50,000 per location per occurrence." (*Id.* ¶ 11.)

On May 19, 2022, the Association's property suffered damage from wind and hail. CIBA's claims adjusting group determined the replacement cost value was $1,446,736.43. Under the quoted policy, the Association's deductible would have been $600,000.00. (*Id.* ¶ 12.) According to the issued policy, however, the Association must pay the entire repair cost because the adjusted value did not exceed the purported 5% deductible, or approximately $1,546,766.00. (*Id.* ¶ 13.) The Association (1) brought claims for negligence and breach of fiduciary duty against B&W, and (2) seeks reformation of the insurance policy as an equitable remedy.

## PROCEDURAL BACKGROUND

The court issued an Amended Pretrial Scheduling Order on December 3, 2024, which set the deadline to amend the pleadings as January 1, 2025. (Dkt. No. 27.) The parties engaged in discovery, and on January 20, 2025, the Association filed the instant motion requesting leave to amend its Complaint to add claims of unjust enrichment and negligence against CIBA. (Dkt. No. 29.)

CIBA opposes the motion only with respect to the proposed negligence claim. (*See* Mem. in Opp'n, Dkt. No. 39.) Specifically, CIBA argues that the Association's proposed negligence claim is futile because the Proposed Amended Complaint fails to plausibly plead that CIBA owed the Association any duty of care. The Court heard argument on

2

February 5, 2025, and the parties submitted supplementary briefing on February 19 and 25, 2025. (Dkt. Nos. 42, 43, 46.)

## ANALYSIS

**A. Motion to Amend Standard**

The Federal Rules provide that courts should "freely give leave" to amend pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2). This forgiving standard does not, however, give parties an absolute right to amend their claim for any reason at any time. *See Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008). Courts can deny a motion to amend for "compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Id.* (cleaned up).

When a motion to amend is brought after a court-ordered deadline, the party seeking the amendment must show good cause justifying the proposed amendment. Fed. R. Civ. P. 16(b)(4); *Sherman*, 532 F.3d at 716. "The primary measure of good cause is the movant's diligence in attempting to meet the [scheduling] order's requirements." *Sherman*, 532 F.3d at 716 (cleaned up). Put differently, "[t]he 'good cause' standard requires a demonstration that the existing schedule cannot reasonably be met despite the diligence of the party seeking the extension." *Burris v. Versa Products, Inc.*, Case No. 07-cv-3938 (JRT/JJK), 2009 WL 3164783, at *4 (D. Minn. Sept. 29, 2009) (cleaned up). The separate inquiries under Rule 15 and Rule 16 serve distinct purposes:

> Rule 16(b)(4) must be addressed first, as it resolves whether the *scheduling order* should be *modified*. If the court find good cause under Rule 16, then the court proceeds to the Rule 15 inquiry, which

3

> resolves whether the *complaint* can be *amended*. In other words, Rule 16 opens the door to Rule 15.

*Shank v. Carleton College*, 329 F.R.D. 610, 614 (D. Minn. 2019).

The Association does not address the standard for amending pleadings under Rule 16(b), instead focusing solely on the more lenient Rule 15(a)(2) standard. And although courts should freely give leave to amend pleadings "when justice so requires," changing a deadline in the scheduling order after the deadline has passed requires a good cause showing. Fed. R. Civ. P. 16(b); *Sherman*, 532 F.3d at 716. Here, fact discovery does not close for several weeks, and neither Defendant would experience prejudice if the Association is allowed to amend the Complaint. Nothing before this Court demonstrates that the Association has acted in bad faith or that there has been any undue delay in bringing this motion. Furthermore, CIBA argues only that one of the two proposed added claims is futile; CIBA does not oppose the Association's motion regarding the proposed claim for unjust enrichment. (Resp. to Pl.'s Mot. for Leave to Am., Dkt. No. 39, at 1.) Accordingly, because there are no allegations of bad faith, dilatory motive, undue delay, or resulting prejudice, this Court will grant the motion as it relates to the Association's proposed unjust enrichment claim.

### B. Negligence Claim

#### 1. Legal Standard

As for the proposed negligence claim, CIBA argues that adding the claim would be futile because the Proposed Amended Complaint fails to plausibly allege the existence of a duty running from CIBA to the Association.

Courts should deny leave to amend a complaint where the amendment would be futile. *Geier v. Mo. Ethics Comm'n*, 715 F.3d 674, 678 (8th Cir. 2013). An amendment is futile where the proposed claim "could not withstand a motion to dismiss under Rule 12(b)(6)." *Silva v. Metropolitan Life Ins. Co.*, 762 F.3d 711, 719 (8th Cir. 2014) (cleaned up). "To survive a motion to dismiss for failure to state a claim, the complaint must show the plaintiff is entitled to relief by alleging sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *In re Pre-Filled Propane Tank Antitrust Litig.*, 860 F.3d 1059, 1063 (8th Cir. 2017) (en banc) (cleaned up); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). On a motion to dismiss, the court must take all of the plaintiff's allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### 2. The Proposed Amended Complaint fails to allege that CIBA owed a duty of care.

A negligence claim requires a plaintiff to plead: (1) a duty of care; (2) breach of that duty; (3) injury to the plaintiff; and (4) that the breach was the proximate cause of the injury. *Domagala v. Rolland*, 805 N.W.2d 14, 22 (Minn. 2011). "Duty is a threshold question, because 'in the absence of a legal duty, the negligence claim fails.'" *McDougall v. CRC Indus., Inc.*, 523 F. Supp. 3d 1061, 1071 (D. Minn. 2021) (citing *Domagala*, 805 N.W.2d at 22). CIBA argues that the Proposed Amended Complaint fails to state sufficient facts supporting the existence of a duty.

Generally, where a contract defines the relationship between two parties, a plaintiff is not entitled to recover tort damages. *Wild v. Rarig*, 234 N.W.2d 775, 789-90 (Minn. 1975)); *Russo v. NCS Pearson, Inc.*, 462 F. Supp. 2d 981, 994 (D. Minn. 2006). "The Minnesota Supreme Court has not expressly held that a duty of care cannot exist in an adversarial, arm's length, commercial transaction, but the Court has held that this is a factor that cuts against finding a duty of care." *Minn. Pipe & Equip. Co. v. Ameron Int'l Corp.*, 938 F. Supp. 2d 862, 872 (D. Minn. 2013) (cleaned up). "[C]ertain legal relationships give rise to a duty of care, including accountant/client, attorney/client, and fiduciary relationships involving guardians, executors, and directors of corporations." *Id*. When a relationship is not one of the aforementioned types, a court may still find that a duty of care exists depending on "(1) whether the relationship is of a type that supports recognizing a duty of care, (2) whether the defendant has special knowledge or expertise indicative of a special legal relationship, and (3) whether public policy reasons warrant imposing a duty of care on the relationship." *Id.* (citing *Williams v. Smith*, 820 N.W.2d 807, 816-19 (Minn. 2012)). This exception is usually "limited to a handful of specialized professionals such as '[a]rchitects, doctors, engineers, attorneys, and others.'" *Russo*, 432 F. Supp. 2d at 994 (quoting *City of Mounds View v. Walijarvi*, 263 N.W.2d 420, 423 (Minn. 1978)).

Here, the Proposed Amended Complaint does not include any facts that support a connection between the Association and CIBA that would give rise to a legal duty. The Association did not communicate directly with CIBA and was not working in close collaboration with or under the guidance of CIBA. The only connection between the Association and CIBA is the insurance contract. The Association offers no factual or legal

6

support for its statement that "CIBA, as the insurer, had a duty to bind the policy consistent with the quote it provided and the instructions it was given." (Mem. in Supp., Dkt. No. 30, at 6.) But there are no allegations that the Association gave CIBA any direct instructions. The relationship between Plaintiff and CIBA arises wholly from the insurance contract.

The Association relies on *Johnson v. Urie*, 405 N.W.2d 887 (Minn. 1987), for the proposition that CIBA owed it a common law duty of care. As the Association correctly states, *Urie* held that "an insurance agent may owe a common law duty to provide advice or offer optional insurance coverage when special circumstances exist, such as when the agent is aware that the client is relying on their expertise." (Suppl. Mem. in Supp., Dkt. No. 43, at 5 (citing *Urie*, 405 N.W.2d at 889).) But the circumstances of that case were markedly different than the allegations in the Proposed Amended Complaint. The complaint in *Urie* alleged that the insurance agent "knew that Johnson was relying upon Urie's expertise in the insurance field" and that Urie had "voluntarily assumed the duty of advising and counseling them with respect to the types and amounts" of coverage needed. 405 N.W.2d at 888. Here, the Association puts forth no allegations that CIBA knew that it was relying on CIBA's expertise in the insurance field or that CIBA voluntarily assumed an advisory role with respect to the Association.

The Association and CIBA were two parties to an arm's length transaction, and "Minnesota law does not recognize a duty of care in such situations." *Ascente Bus. Consulting, LLC v. DR MyCommerce*, Case no. 18-cv-138 (JNE/KMM), 2018 WL 3597674, at *6 (D. Minn. July 26, 2018). The Proposed Amended Complaint does not allege any facts giving rise to a special relationship that imposes a common law duty on

CIBA. And because the Association fails to allege facts giving rise to a duty, allowing amendment of the pleadings to add a negligence claim would be futile. The Association's motion will therefore be denied with respect to its proposed negligence claim.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, and for the reasons stated above **IT IS HEREBY ORDERED THAT**:

1. Plaintiff's Motion for Leave to Amend is **GRANTED IN PART** and **DENIED IN PART**.

2. The Motion is **GRANTED** as to Plaintiff's claim for unjust enrichment, and Plaintiff shall file an Amended Complaint within 14 days of this Order.

3. The Motion is **DENIED** as to Plaintiff's claim for negligence.

Dated: March 5, 2025

*s/Shannon G. Elkins*
SHANNON G. ELKINS
United States Magistrate Judge